# Wytheville

ANNIE M. DEARING, ET ALS. V. FRANK WALTER, ET ALS.

June 10, 1940.

Record No. 2218.

Present, All the Justices.

The opinion states the case.

*Weaver, Armstrong & Marshall* and *Burnett Miller, Sr.,* for the appellants.

*R. A. McIntyre,* for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

This is an appeal from sundry decrees pronounced by the Circuit Court of Rappahannock county in a chancery suit instituted by Frank Walter, Richard Walter and Blanche Johnson, appellees, against Annie M. Dearing, in her own right and as executrix of the will of Joseph C. Walter, J. A. Dearing, W. Grimsley Dearing and Margaret Walter, widow of Joseph C. Walter (deceased), appellants.

Joseph C. Walter departed this life testate on February 28, 1928. Annie M. Dearing was named as executrix and directed: (1) to erect a suitable tombstone to the memory of the testator; (2) to convert the real and personal property into cash and pay certain specified legacies; (3) to divide the residue equally between appellants and appellees. This division was based upon the contingency of the sur-

vival of the wife, who, in that event should take a dower right in the estate.

On May 19, 1930, appellees filed their bill of complaint, in which they alleged the above facts, and specifically charged that the estate was not being properly administered by the executrix, and prayed that the terms of the will be carried out under the supervision of the court.

On July 25, 1930, appellants filed their joint answer, denying that the estate was being improperly administered. Upon the filing of the replication to the answer, the court entered a decree referring the matter to a commissioner to ascertain and report, among other things, all debts against the estate of Joseph C. Walter, deceased, including a settlement of the accounts of the executrix. At the hearing before the commissioner, W. G. Dearing presented a claim against the estate, evidenced by a bond dated November 6, 1924, in the principal sum of $2,875. Sundry depositions were taken by the commissioner in favor of and against the validity of this bond. On March 23, 1934, the commissioner filed a report containing this language:

"W. G. Dearing exhibited to your Commissioner as an existing debt against the estate a bond for $2,875.00, in the handwriting of the said W. G. Dearing and apparently signed by the testator. Upon cross-examination the said Dearing made inconsistent statements as to what was the consideration for this bond and promised in his depositions to exhibit concrete proof in the form of a check he claimed to hand. This he has not done. Considering the failure of said Dearing to produce this check and the evidence of four witnesses who testified that shortly before his death the testator claimed that the said Dearing was indebted to him, your Commissioner is not satisfied that the said bond is valid and a legal claim against this estate, especially as said Dearing has since been before the Commissioner and had an opportunity to submit some corroborative proof. Your Commissioner finds further and so reports that until these matters are finally passed on by the court he cannot possibly with the data before him make further report upon this

inquiry as to the matters contained in the decree of reference; and he prays that he may have the further directions of the Chancellor."

To this report exceptions were filed by W. G. Dearing, asserting the validity of the bond. Thereupon, on May 18, 1936, the court "being of the opinion from the said record and the evidence therein that this cause will be rendered doubtful by the conflicting evidence of Grimsley Dearing a creditor * * * " *ex mero motu* decreed an issue out of chancery to determine the validity of the bond. The issue directed by that decree was never tried, as is shown by a decree entered March 19, 1937. In this decree it is recited that due to the failure of W. G. Dearing to appear and offer proof in support of the validity of the bond, the decree directing an issue out of chancery is revoked and annulled. The decree further recites that "the said debt was without consideration and is not a valid and subsisting claim against said estate." The decree further provides: "And the Master Commissioner * * * shall disallow the claim of Grimsley Dearing for $2,875.00 filed as a claim against the estate of the deceased Joseph C. Walter * * * ." Pursuant to the direction of the court, the commissioner, on the 12th day of November, 1938, filed his report disallowing the claim of W. G. Dearing for the sum of $2,875. Exceptions filed to this report were overruled by decree dated the 17th day of May, 1939, and on July 31, 1939, a final decree was entered, confirming the report of the commissioner filed on the 29th day of June, 1939.

The action of the court in refusing to allow the claim of W. G. Dearing against the estate of Joseph C. Walter is assigned as error.

We are met at the threshold of the case with the contention of appellees that the claim of W. G. Dearing was finally adjudicated by the decree entered March 19, 1937, and therefore, the appeal as to him was improvidently allowed.

The first question to be determined is whether the decree of March 19, 1937, adjudicating the claim of W. G. Dearing is a final decree, for if it is, the appeal of W. G. Dearing

comes too late. See section 6337 of the Code of Virginia. To enter upon a full discussion of the characteristics of a final decree as contra-distinguished from an interlocutory decree would result in a fruitless effort to glean in a judicial field which has been swept clean by the decisions of this court.

In a note appended to section 6337 of the Code is to be found a complete list of the cases decided by this court dealing with every phase of the question. See also, monographic note appended to *Evans* v. *Spurgin*, 11 Gratt. (52 Va.) 615, Virginia Reports Annotated.

Since the decision of this court in *Royall's Adm'rs* v. *Johnson*, 1 Rand. (22 Va.) 421, the fixed doctrine has been that a decree may be final as to one party and not final as to another party in the same cause.

It is apparent from an inspection of the bill of complaint that the only reason for making W. G. Dearing a party defendant thereto was due to the fact that he was a beneficiary under the will of Joseph C. Walter and therefore interested in the settlement of the estate. That he was a creditor of the estate is not even suggested in the bill. His claim that he was a creditor only became evident when he filed the claim here asserted before the commissioner. Upon filing his alleged bond with the commissioner, he became, *ipso facto,* a party plaintiff and stood upon the same plane as any other party plaintiff seeking to enforce a claim against the estate. There was no community of interest between W. G. Dearing and the other beneficiaries under the will, in so far as his claim was concerned. He stood single and alone in the assertion of his claim and when by the decree of March 19, 1937, it was adjudged that his claim was invalid, the principles of the cause were finally adjudicated and he was put out of the case as an alleged creditor, and though in fact the cause relating to the ultimate settlement of the estate was retained upon the docket for years thereafter, there was no relation between the retention of the cause for the settlement of the estate and the assertion of the claim of Dearing against the estate. All

that could be done in regard to his claim was done when the court, by its decree, held the claim invalid. His right to appeal from that decree became fixed as of that date, even had the record disclosed that Dearing was indebted to the estate.

In *Noel's Adm'r* v. *Noel's Adm'r*, 86 Va. 109, 112, 9 S. E. 584, 585, it is said: "According to the uniform decisions of this court, a decree which disposes of the whole subject gives all the relief that is contemplated, and leaves nothing to be done by the court, is only to be regarded as final. On the other hand, every decree which leaves anything in the cause to be done by the court is interlocutory as between the parties remaining in the court."

The case of *Allen* v. *Parkey*, 154 Va. 739, 748, 149 S. E. 615, 619, 154 S. E. 919, is relied upon by appellant W. G. Dearing. That case is not in point as it clearly appears from the opinion of Mr. Justice Holt that the decree relied upon as final "left many vital questions unsettled."

Our conclusion upon this branch of the case is that the appeal allowed Grimsley Dearing was improvidently awarded, and therefore, it is dismissed. This conclusion is reached without regret, as a careful reading of the record demonstrates that the question of the validity of the bond was correctly decided by the circuit court upon a conflict of evidence.

The next assignment of error is that the court erred: "In holding that the claim of Annie M. Dearing, trading as Dearing and Company, or any part thereof, was barred by the statute of limitations, no plea of the statute having been filed."

Annie M. Dearing, trading as Dearing and Company, filed with the commissioner her claim against the estate of Joseph C. Walter. This claim amounted to the sum of $476.80. In answer to the question: "please explain the business relations between you and Mr. J. C. Walter prior to the time this account was incurred, going back for eight or nine years prior to his death", she stated: "Well I paid his hands, furnished them their rations, furnished him any

money he wanted to use * * * and we usually settled every two or two and one half years." The final settlement between the parties occurred on May 29, 1925. While the record fails to show the filing of a formal plea of the statute of limitations, it does show that appellees objected to the allowance of the claim and here rely upon the doctrine that it was the legal duty of the executrix to interpose a plea of the statute of limitations against her own debt. See section 5406 of the Code.

█ In addition to the holding of the commissioner that the claim of Annie M. Dearing was barred by the statute of limitations, he also held that as she was a legatee under the will (in the sum of $2,000) that this bequest was intended by the testator to be in satisfaction of the debt. The sole reliance of Annie M. Dearing to sustain the account is her own testimony. She fails to show any authority from Joseph C. Walter to warrant the alleged extension of credit. The report of the commissioner was confirmed by the trial court and in the confused condition of the account rendered we are unable to hold that the confirmation of the report was error.

It is further assigned as error that the court erred: "In refusing to allow the executrix * * * to charge the estate with $700 to be paid on account of a crypt in a mausoleum." This assignment involves a construction of the first clause of the will of Joseph C. Walter, which reads:

"I desire that all my just debts and funeral expenses be paid as soon after my decease as practical; and I likewise desire my personal representative hereinafter named to have a suitable tombstone erected to my memory."

It appears from the record that Annie M. and Grimsley Dearing who were the step-children of Joseph C. Walter had purchased a lot and erected thereon a mausoleum at a cost of $4,200. They personally paid therefor the sum of $3,500. Upon the death of the testator, his remains were placed in a crypt in the mausoleum where they now repose.

█ If we give to the word "tombstone" its technical definition it is in no sense a mausoleum. But when we con-

strue the will in the light of the facts and circumstances as shown by the record we have no difficulty in arriving at the *intention* of the testator, which is "the polar star" in the construction of a will. The estate left by the testator was a considerable one and the beneficiaries named in his will are not of lineal descent. The proof is undisputed that Joseph C. Walter expressed abhorrence at the idea of being "buried under the ground", and on sundry occasions expressed the wish to be "buried above the ground". It was in conformity with this expressed wish that the executrix placed his body in the crypt in the mausoleum which had been prepared to receive it. For one of his financial standing the funeral expenses were exceedingly moderate. When we add the proportionate cost of the mausoleum to the funeral cost we are forced to conclude that the executrix has not been guilty of a breach of her executorial duties. Our conclusion on this assignment is to reverse the decree limiting the amount to be expended to $300, and remand the cause so that in the final settlement of the estate, the executrix may be allowed the sum of $700 in payment of the place wherein the body of Joseph C. Walter reposes.

■ The executrix substantially prevailing on this last issue is entitled to recover of the appellees one-third of the assessed costs. The residue of the costs is adjudged against all of the appellants.

*Affirmed in part and reversed in part.*